[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Alistair and Dorothy Gemmell (plaintiffs), have brought this action against the defendants, Dennis and Valerie Lee, Thomas and Susan O'Donnell, Ray and Joan Somers, Robert and Roberta Lehet, and Stephen and Barbara Hulbert (defendants).
This is an action to quiet title to an easement over a proposed road or private right of way known as Glen Road. The plaintiffs claim that the defendants are interfering with their right to make use of said proposed road and further they are encroaching upon the plaintiffs' property.
All of the properties owned by the parties descend from a common owner, one Mary Gracy. The various deeds from Mary Gracy to the parties herein form the basis for this dispute.
The deed from Mary Gracy to the plaintiffs' predecessor in title contains a description of the property conveyed setting forth its various boundaries, some of which are described as bordering on a certain "right of way". (See Plaintiffs' Exhibit A 1). There is no specific reference in the deed to any right of passage or use over said right of way. The deed does, however, contain a referral to a map, alleged to be of record[1], for a further description of the property. The reference reads as follows:
 "The above parcel is fully described and reference is here had to a map entitled `Gracy, Orange, Conn., scale 1" — 40', July 1929, Wynne Hahn, Civil Engineers and Surveyors' on file in the Orange Town Clerk's Office." (See Exhibit A 14).
All of the deeds but one in the plaintiffs' chain of title contain this reference to the map of July 1929.
Subsequently, the deeds to the defendants or their predecessors in title refer not only to the map but also refer to the right through over and upon said right of way. An example of such grant is found in the deed to the defendant Joan Somers, (see CT Page 10411 Defendant's Exhibit 1):
 "[T]ogether with a right of way for all purposes whatsoever, in common with Mary Gracy, her heirs and assigns, and in common with all others to whom a similar right may have been heretofore granted, or may hereafter be granted in, through, over and upon that portion of said right of way 25 feet in width, as herein mentioned, and as the same is shown on a Map entitled `Gracy, Orange, Conn., Scale 1 inch equals 40 feet, July 1920, Wynne Hahn, Civil Engineers', on file in the Orange Town Clerk's Office. . . ."
Over the years, the "Proposed Road" or "right of way" has become known as Glen Road and several of the deeds refer to the right in common with others to the use of Glen Road.
The issue for the court is whether a reference, in a deed, to a map alleged to be on file in the Orange Town Clerk's Office, by itself and without any specific grant conveys an interest in a proposed road depicted thereon, said road being bounded on the property being conveyed.
Our Supreme Court in Derby v. Alling, 40 Conn. 410, 432, stated the following:
 "The map is expressly referred to in the deed and by reference is made a part of it. We think therefore that the deed must be construed as embracing all the land which is included within the limits of the street as delineated on the map. "
They go on further to say:
 "When the owner of village property makes and publishes a map of it, with streets distinctly delineated, and then sells lots bounded on these streets, he comes under obligation to his vendors to open the streets to the public; the precise extent of the obligation being dependent on the particular circumstances of the case." Id.
In the case of Pierce v. Roberts, 57 Conn. 31, 37, the court stated in reference to the designation "road" on a map: CT Page 10412
 "It would, however, doubtless be conceded that as to the latter, the deed alone, in connection with the map, would constitute an irrevocable dedication of that space to public use, although there is no grant or covenant in the deed to that effect. . . ."
The court in Pierce went on further to state:
 "But are we right in holding the map to be an essential part of the deeds? A statute enacted in 1867, now constituting section 81 of the General Statutes, provides in substance, `that where land is surveyed and mapped and the map is filed in the town clerk's office, where the land is situated, such map shall be deemed part of the deeds referring thereto.' This statute, however, seems to have been declarative of the common law, for in Derby v. Alling, 40 Conn. 100, this court in construing a deed which antedated the statute some seventeen years, held that when the land was described as bounded by a street, not expressly defined in the deed but shown upon a plan therein referred to the grantor was estopped to deny the existence not only of the street, but of all the connecting streets delineated upon the same plan as far as the grantor's land extended; and that where a plan is referred to in a deed for a description of the estate conveyed, not only the course and distances but all other particulars upon that plan, are to be regarded as if they had been recited in the deed."
In Whitten v. Clark, 112 Conn. 28, 32, the court held that:
 ". . . the law is well settled that when an owner of land causes a map to be made of it upon which are delineated separate lots and streets and highways by which access may be had to them, and then sells lots, referring in his conveyances to the map, the lot owners acquire the right to have the streets and highways thereafter kept open for use in connection with their deeds. Derby v. Alling, 40 Conn. 410, 432; Pierce v. Roberts, 57 Conn. 31, 38, 17 A. 275; Fisk v. Ley, 76 Conn. 295, 300; Street v. Leete, 79 Conn. 352, 358, 65 A. 373.
The court in Whitten v. Clark, supra, makes note of a conflict of opinion on the topic noting some courts holding his right to apply to all streets or parts thereof depicted on the map. While CT Page 10413 others restrict his right to those streets as give him access to some other public ways. Id. 33.
Referring to its decision in Derby v. Alling, supra at 32, stated:
 "While thus we accept the principle that the right of a lot owner does not extend of necessity to all the streets in the tract delineated on the map, we have not in that case or elsewhere attempted to fix the limits of his right. On the one hand, to restrict that right to such streets as will give him access to some other way is to take too narrow a view, for it must fairly be assumed that he bought his lot in reliance upon the situation disclosed upon the map so far as it would be beneficial to him. On the other hand, to give to every lot owner in the tract the right to demand that every portion of a street delineated upon it shall be held subject to a future use for highway purposes, no matter how remote it may be from his premises and however clear it may be that it will never be of any value to him, is to adopt a doctrine calculated to lay a dead hand upon the natural use, development and sale of property as the needs of a community may develop. This the public policy forbids.
 If the doctrine in question be rested upon estoppel as supported in Derby v. Alling, supra pg. 435, there is no sound reason to extend it as regards any lot owner to include streets which in any situation reasonably to be anticipated would not prove beneficial to him and from the deprivation of which he would suffer no injury. See Bell v. Todd, 51, Mich. 21, 16 N.W. 304. Or, if it be rested upon an implied covenant, as is sometimes stated, there is no occasion to extend that covenant beyond a situation which could in reason have furnished an inducement to the purchase of the lot because of some benefit to accrue to it."
It would appear, therefore, that the right of way must be of some benefit to the grantee or, at the very least, an inducement to purchase the property because of some benefit accruing. "The intent of the parties to a deed as to what is conveyed by it, must be ascertained from the deed itself, read in the light of the surrounding circumstances, and when found must control." Post HillImprovement Co., et al. v. Brandigee, et al., 74 Conn. 338, 342. CT Page 10414
The predominant circumstance surrounding the acquisition of the property by plaintiffs' predecessor is the reference in the deed to the map and what it describes. On the map is the right of way over which the plaintiffs claim an easement. It is entitled "Proposed Road". If one examines the map (see Exhibit B), one would have to note that the road terminates at a point well north of plaintiff's southerly boundary, a point well within the property owned by the plaintiffs. In fact, this extension continues well past the right of way exercised by the defendants. For a substantial distance the plaintiffs own on both sides of the Proposed Road. Circumstances existing at the time of the transfer of title would indicate some use of the Road by the plaintiffs was anticipated by the grantor. Testimony at trial indicated that the rear portion of the property conveyed had a sharp slope to it. This combined with the fact that the right of way as shown on Exhibit C extended northerly onto plaintiffs' property substantiates this fact.
More recently, the Supreme Court in Stankiewicz v. Miami BeachAssoc. Inc., 191 Conn. 165, 171, stated that: "A grantee who takes under a deed referring to a map, thus cannot justifiably look only
to the map, but must consider it in conjunction with other deeds and documents comprising the chain of title. Indeed reference to a map in a conveyance normally is utilized merely as a descriptive tool to identify the property and therefore does not itself convey." See 23 Am.Jur.2d, Deeds, Sec. 232. (Emphasis in citation.) The court found in Stankiewicz that:
"An implied easement in such roadways may exist only, if it exists at all, when the grantor owns the fee to the roadways and makes reference to a map which depicts the roadways." Id.
There is no dispute that intitially Mary Gracy owed the fee in the right of way.
The resolution of this matter rests with the circumstances surrounding the deed given to the plaintiffs' predecessor. The conveyance refers everyone to the map in order for one to have a full description of what has been conveyed. Based on the evidence presented, the court finds that the plaintiffs have an easement over Glen Road, giving them access to the rear of their property.
The defendants have raised several special defenses, namely, adverse possession, the statute of limitations relative to adverse CT Page 10415 possession and an easement by prescription.
"The essential elements of an adverse possession sufficient to create title to the land in the claimant are that the owner shall be ousted of his possession and kept out uninterruptedly for a period of fifteen years by an open, visible and exclusive possession by the claimant without the license or consent of the owner." Matto v. Dan Beard, Inc., 15 Conn. App. 458, 475.
"Title by adverse possession must be established by clear and positive proof. Clark v. Draka, 1 Conn. App. 481, 489." Sanfordv. Dimes, 3 Conn. App. 639, 640. The court in Clark v. Draka,
supra at 487 held that "clear and convincing" proof should be equated with "clear and positive proof."
Thus, one can see that a higher standard of care is needed to establish adverse possession than a mere preponderance of the evidence. The deeds in the defendants' chain of title show title to a substantial portion of Glen Road to be in Robert Lehet. It is highly unlikely that he would make a claim of adverse possession under these circumstances. A further examination of defendants' chain of title shows that all of them have an explicit easement in Glen Road.
The only question for the court to determine is whether the Gemmells have been ousted of any easement that they claim to have in Glen Road. Testimony elicited at the trial indicated that the Gemmells made use of the right of way as far back as 1935. It was used to allow a tractor access to a rear lot for the purpose of farming the rear portion of their property. During World War II, that area was used by their neighbors for Victory Gardens. The testimony presented indicated they had no difficulty using the property until 1991 or 1992 when access was blocked by cars.
The younger Gemmell testified that he used a pick-up truck over Glen Road, gaining access to the rear for gardening. This use was from 1975 to about 1990. He did testify that on one occasion he found a tree trunk blocking entrance to the back lot.
Mr. Gemmell, the plaintiff, finding his use of the right of way impaired, hired an attorney resulting in the litigation presently before the court.
While the defendants make some note of the lack of cooperation on the part of the plaintiffs in the maintenance of Glen Road and CT Page 10416 their refusal to take part in an effort to make it a public highway, the court finds that the defendants have failed to show any ouster of possession by "clear and positive proof."
Since adverse possession must be for a period of 15 years and since the defendants have failed to sustain the burden of proof necessary judgment may enter for the plaintiffs herein. The defendants are enjoined from interfering with the plaintiffs right to make use of Glen Road and to cease any encroachment upon the property of the plaintiffs.
The Court
By Curran, J.