56  508
66  292

THE TOWN OF CLINTON vs. HENRY BACON.

Hartford Dist., May T., 1888.  PARK, C. J., CARPENTER, PARDEE,
LOOMIS and BEARDSLEY, Js.

The statute with regard to shell fisheries provides (Gen. Statutes, § 2348), for the setting out to individuals upon their application, by a committee of the town, of oyster grounds within the navigable waters of any town; § 2370 forbids the taking of any natural oyster-bed for the purpose; and § 2356 provides for proceedings for setting aside any designation where the ground shall be found to have been a natural oyster-bed,

the proceeding in this case to be by a petition of the town or any individual aggrieved to the Superior Court, the appointment of a committee to hear the case and report the facts, and an order for the removal of the stakes inclosing the ground if it shall be found to have been a natural oyster-bed. Held—

1. That where a place had been designated to the defendant as an oyster ground more than twenty years before, but on a petition now brought by the town it was found to have been a natural oyster-bed for thirty years before such designation, the uninterrupted and undisturbed possession and use of the place by the defendant for planting oysters for the whole period, had not given him a title by adverse possession, the title being in the state, against which there could be no title gained by such possession; the defendant's claim of title having, moreover, been only of such title as he acquired by the designation.

2. That the statute was not unconstitutional in making no provision for a trial of the question of title by a jury, the case being like that of a proceeding in equity to remove a cloud from a title, and falling within general equitable principles.

3. That the designation was not legalized by the act of 1877 (Session Laws of 1877, ch. 94, sec. 2), which provides that "all designations of places for planting oysters within the navigable waters of any town which have been heretofore made by authority of such town, are hereby validated and confirmed." The designation here was one which the town could not have authorized.

The statute (Gen. Statutes, § 2317), authorizes the shell fish Commissioners to grant to individuals " perpetual franchises " in oyster grounds. This seems to indicate that the party to whom a designation is made by a town committee takes a like interest.

[Argued May 2d—decided June 26th, 1888.]

PETITION to the Superior Court in Middlesex County, under Gen. Statutes, § 2356, for an order for the removal of the stakes marking oyster ground occupied by the defendant for planting oysters under a designation of the same to him by a committee of the plaintiff town in 1863 under Gen. Statutes, § 2348, such designation being claimed to have been illegal and to be void because the ground was at the time a natural oyster-bed, which, by § 2370, could not be set out to an individual. The case was under the statute referred to a committee, who found, with sundry other facts, that at the time of the designation of the ground to the defendant it had been for more than thirty years a natural oyster-bed. The defendant remonstrated against the acceptance of the report, the plaintiffs made answer to the remonstrance,

and the court found the facts upon the remonstrance and
answer, and reserved the case for the advice of this court.
The facts found both by the committee and by the court
are sufficiently stated in the opinion.

*L. Harrison* and *J. W. Alling*, for the defendant.

1. The defendant has acquired a complete title by adverse
possession for over fifteen years. The committee find that
at the time of the designation of the ground to the defend-
ant, he "staked out the ground and has kept it staked out
continuously from that time to the present." Also that
" after said designation the defendant continued to lay down
oysters upon said ground every year; that he generally laid
down Virginia oysters in the spring and took them up in the
fall." It will be conceded that this possession is sufficient
to give a title as against an individual, but it is contended
by the plaintiffs that the state was the grantor and that the
adverse possession was against the state, and that no title
can be acquired against the public by such possession. We
claim that in cases like this the title of the defendant is good,
whether the grantor was the state or not. The state did
not own the ground under its navigable waters, in the exer-
cise of any of the acts of sovereignty peculiar to a state,
and the use of such grounds for the cultivation of oysters
does not interfere with any of the duties of the sovereignty
of the state. Such ownership and use in no way concern
the military or police power of the state, or its governmental
duty to provide highways, nor does it interfere with com-
merce and navigation. The ownership of such grounds was
left in the state because no one else wanted it. Now that it
has been discovered that such grounds can be tilled and culti-
vated, and used for growing oysters, the ownership of the
state is clearly seen to be the same, no more, no less, than
its original ownership of the upland, before it had been
allotted in severalty to individuals. In *McCready* v. *Vir-
ginia*, 94 U. S. R., 396, the Supreme Court of the United
States say :—" The planting of oysters in a soil covered by
water, owned in common by the people of the state, is not

different in principle from that of planting corn upon dry land held in the same way. Both are for the purpose of cultivation and profit." In *Litchfield* v. *Wilmot*, 2 Root, 288, it was held that " fifteen years uninterrupted possession of a highway will be a bar to the town's right of recovering it for the use of a highway." In *Town of Derby* v. *Alling*, 40 Conn., 410, the doctrine of adverse possession against the public was thoroughly discussed and carefully considered. The question was whether, where there had been a deed of dedication of a street to the town, it could be opened and worked as a street where the ground had been inclosed and occupied for thirty years. This court held that while there was technically no statute of limitations applicable to the case, yet that if the demand for the extension of the street had existed, presumably for fifteen years, and during that period the authorities had taken no steps to extend the street, the possession of the defendants would have been adverse, and the public rights would have been lost by the delay in asserting them. So in *Tracy* v. *Norwich & Worcester R. R. Co.*, 39 Conn., 382, it was decided by this court that the title to an island, formed in the navigable waters of this state, vested in the state, but that an individual could acquire title by the requisite period of adverse possession. But though the technical title was in the state, yet, at least until the commission act of 1881, the state virtually transferred to the people in the shore towns the substantial control of and all benefits to be derived from its oyster grounds. It virtually turned over to the people in these towns the oyster grounds in their limits, and authorized *them* to convey them in severalty, and to take care of the natural oyster-beds within their limits, as their interest might determine. Any one of the inhabitants of Clinton could, at any time within fifteen years from the date of the grant to the defendant, have tested its validity. *Averill* v. *Hull*, 37 Conn., 323. Now it is well settled that the rule of *nullum tempus* only applies to claims in which the state is the *real* party, and has no application in cases where it has no real interest in the litigation, but its name is used to enforce a right

which inures solely to the benefit of an individual or a corporation, municipal or otherwise. *Miller* v. *State*, 38 Ala., 600; *Moody* v. *Fleming*, 4 Geo., 115. Nor does the rule apply to municipal corporations, deriving their powers from the sovereign, although their powers, in a limited sense, are governmental. 2 Dillon's Mun. Corp., §§ 465, 673. Thus the statute runs for or against towns and cities, and also for or against counties, in the same manner as it does for and against individuals. *Cincinnati* v. *Evans*, 5 Ohio St., 594; *Lessee of Cincinnati* v. *First Presbyt. Church*, 8 Ohio, 299; *School Directors* v. *Georges*, 50 Md., 194; *County of St. Charles* v. *Powell*, 22 Misso., 525; *Evans* v. *Erie Co.*, 66 Penn. St., 222; *Simplot* v. *Dubuque*, 49 Iowa, 630. Possession under a deed though void, with a claim of right, is adverse. *Bryan* v. *Atwater*, 5 Day, 181; *Griswold* v. *Butler*, 3 Conn., 227, 246; *Taylor* v. *Public Hall Co.*, 35 id., 430, 437. See also *French* v. *Pearce*, 8 Conn., 439, 446; *Johnson* v. *Gorham*, 38 id., 513. The question as to oyster grounds in this state is peculiar; it is not like the sale of public lands, where *all* is for sale, but a case where a title for a certain lot shall pass, if the agents of the state and town say that it is of a certain quality. The question is therefore *sui generis*. The decision of it should be controlled by the doctrine upon which the statutes of limitations are based,—namely, that they are statutes of repose, and as such to be favored and extended to analogous cases, and by the maxim that it is for the public good that there be an end to litigation.

2. The healing act of 1877. Whatever defect might have otherwise attached to this designation was waived by the General Assembly by that act. Acts of 1877, ch. 94, sec. 2. It provides as follows:—"All designations of places for planting or cultivating oysters, within the navigable waters of any town, which have heretofore been made by authority of such town, through its selectmen or oyster ground committee, are hereby validated and confirmed." The language of this act covers every conceivable case. The General Assembly deemed it better to validate all designations, than to keep open the doors to litigation.

3. The statute under which this action is brought is unconstitutional. The defendant obtained his title in 1863. It was not then a condition of the grant to him that his title could be attacked afterwards by a special statutory tribunal, for no such statute existed. The property then acquired by him could not be taken from him; his title to it could not be attacked in court except by due process of law, with a right of trial by jury, according to the declaration of rights. This entire proceeding is statutory. Either the inhabitants of the town of Clinton have always had the beneficial interest and ownership in their oyster grounds or they have not. If they have had such interest and ownership, then their title to this ground has long since been lost by their original deed and the subsequent delay in asserting their rights. For at any time any one of their number could have sued the defendant. *Averill* v. *Hull*, 37 Conn., 323. And for almost fifteen years this statute had been in force. If the inhabitants of Clinton never had such beneficial interest or ownership, then the town is a party to this suit only by virtue of the statute. It has nothing to do with the defendant except as this statute authorizes it. Now if the defendant is to be compelled under the statute to defend a suit which a majority of the town may direct to be brought against him, it is at once implied that there is a statutory plaintiff; a person endowed by the General Assembly with power to be the plaintiff, and having otherwise no right to be plaintiff. This plaintiff is also, as between it and the defendant, possessed of superior power. It has all the power of the town to carry on an expensive litigation directed against the defendant, and to compel the defendant as a tax payer to help to defray the expenses of the effort to destroy his own property. But if the defendant is to be compelled by statute to meet such a plaintiff, it behooves the plaintiff to see to it that the defendant has a right of trial by jury, and all the rights to which he would be entitled in due course of legal procedure. All citizens of this state should have the right to have the titles to their property protected, or attacked, if they are to be attacked, by the same general rules of procedure. It

may be lawful to attack designations of oyster grounds made after the statute of 1870, under the statutory provisions of that act, but such course is exceptional, and is right only because it can be held that such a method of setting aside the title was one of the conditions of granting it. Now this statute does not allow this defendant a right of trial by jury. That is incontestable. It does not provide for pleadings. The issue of a natural oyster-bed or not, is made by the statute itself. It does not provide for any acceptance of the report of the committee by the court. It is *called* a court of equity, but the whole nature of the controversy pertains to title to property, and there is not a feature of equitable jurisdiction in the proceeding. The relief is not in the form of any judgment known to a court of law or equity. Calling the court a court of equity does not make it so. But it has always been incident to a court of equity in this state that the court might hear the case. It had power, before recent statutes, to send a cause to a committee, but some reason had to be shown for such action. But this statute is and always has been arbitrary. The court "shall appoint a committee." *Benjamin* v. *Benjamin*, 5 N. York, 383. Now when this suit was commenced the act of 1884 was in force, by which in a regular suit no case could be sent to a committee except upon the "written consent of all the parties." This act was modified, after this trial had been had, by the act of 1886, by which a regular action, wherein issue was joined to the court, could be sent to a committee without the consent of all parties, but only when the court after a "hearing" should "be of opinion that the questions involved are such as clearly ought to be sent to a committee." It is one of our complaints in this case that we were sent to a committee; we think our disasters all arise from that cause. We think it entirely clear that the statutory tribunal, before which we were cited, was unconstitutional, and had no power or jurisdiction over the case. In *Averill* v. *Hull*, 37 Conn., 323, this court held a similar statute unconstitutional, because it did not provide for trial by jury. See also *Wynehamer* v. *People*, 13 N. York,

378. It cannot be successfully contended that we waived this objection by going to trial before the committee. A constitutional objection, affecting the entire validity of a proceeding, cannot be waived. It is a case of entire want of jurisdiction, which cannot be conferred even by consent.

*S. L. Warner* and *W. F. Willcox*, for the plaintiffs, contended that the interest of the defendant, supposing the designation to be a valid one, was only that of a licensee under a license which could at any time be revoked; that supposing the interest granted by a valid designation to be a permanent one, yet that the defendant could not have acquired such an interest by adverse possession, because his possession had not been sufficient to give him a title even against an individual, and that, if it was sufficient for this purpose, such a title could not be gained by a possession adverse to the state; that the healing act of 1877 did not apply to the case, because it was clearly intended to apply only to irregularities in otherwise valid designations, and because by its terms it applied only to designations "authorized" by the towns, while the towns had no power to authorize the designation of natural oyster-beds; and that the statute under which the proceeding was brought was not unconstitutional, but that the case fell within the general principles of equity, and especially came under the jurisdiction of courts of equity to remove clouds from titles.

BEARDSLEY, J. This is a petition for the removal of stakes set up by the defendant, inclosing ground for planting oysters, brought under Gen. Statutes, § 2356, the material parts of which are as follows:

"When any natural oyster-bed or any part thereof is designated, inclosed or staked out contrary to the provisions of this chapter, the Superior Court, as a court of equity, in any county in which said oyster-bed is situated, upon the petition of any individual aggrieved, or by the town in which said oyster-bed is situated, against the person claiming the same, * * * shall appoint a committee, who, hav-

ing been sworn and having given notice to the parties, shall hear said petition, and report the facts thereon to such court, and if it shall appear that such oyster-bed has been improperly staked out, the court may order said committee to remove the stakes inclosing the same; the costs to be paid at the discretion of the court." The case was reserved by the Superior Court for the advice of this court.

The committee to whom the case was referred finds that the defendant in March, 1863, applied to the committee of the town of Clinton appointed for that purpose, to designate the lot in question to be staked out to him for planting oysters, and that thereupon the lot was so designated by the committee, and the defendant staked it out and has kept it inclosed with stakes continuously to this time, and has used the lot each year for laying down or planting oysters upon it.

The committee also finds that the lot in question was, and for more than thirty years had been, a natural oyster-bed, when it was designated to the defendant in 1863.

Upon the trial the defendant filed a written claim that the occupation of the ground for such a length of time, without disturbance from any source, barred the right of the town to claim that the designation should be set aside; and the same claim is made before this court. As bearing upon this claim, the committee further finds that since 1863 the defendant has all the time claimed that the designation of the lot to him gave him the right to the use of it for laying down and planting oysters upon it, and adds that he has claimed to have on said ground just such rights, no more and no less, as such designation gave him. The meaning of this finding seems to be that he claimed no right except under the designation, but has claimed that he thereby acquired the right to so use the lot. A question was made in the argument of the case, as to what were the nature and extent of the right conferred by a valid designation of a lot which was not a natural oyster-bed, the plaintiff claiming that the person to whom it was made took only a revocable license to use it, and the defendant claiming that he acquired the title to the lot upon which the oysters were planted. The statute

regarding the powers of the state commissioners of shell fish-
eries (Gen. Statutes, § 2317), provides that they may grant
" perpetual franchises " in the land subject to their jurisdic-
tion, which perhaps suggests the nature of the right con-
ferred by designations by town committees. It is unnecessary
however to decide this question, because, if we assume that
a valid designation of the lot would have given the defend-
ant a title to it, and that therefore upon the facts found he
has claimed such title since 1863, he has gained nothing by
reason of the use of the lot under such claim.

The defendant had originally no right to the lot in ques-
tion or to the exclusive use of it, unless he derived it from
the state, the owner of it, and has no right to it by adverse
possession except such as he has acquired against the state.

The town of Clinton never had any legal interest in it,
nor any power except to appoint a committee which, *acting
for the state*, might designate for individual use lots which
were not natural oyster-beds. The lot in question is conclu-
sively found to be a natural oyster-bed in this proceeding,
which, although the state is not a nominal party to it, is
brought by its authority and on its behalf. It is elementary
law that a statute of limitations does not run against the
state, the sovereign power.

But the defendant claims that by his occupancy of the lot
since the designation in 1863, he has gained the rights which
a valid designation of it would have given to him.

In *Town of Derby* v. *Alling*, 40 Conn., 436, in which it
was contended that the town had lost the right to build a
highway over land formerly dedicated to their use for that
purpose, by delay in laying out a street across it, Judge
SEYMOUR, in giving the opinion by the court, says : " The
public could not be technically disseized, but public as well
as private rights may be lost by unreasonable delay in assert-
ing them. They may also be lost by an abandonment of them
by those interested in their enforcement. Such abandon-
ment may be inferred from circumstances, or may be pre-
sumed from long continued neglect. The question whether
the state has abandoned its rights or forfeited them by neg-

lect must be largely dependent upon the circumstances of each particular case. It seems to us that neither should be inferred in this case."

The action of the committee of the town of Clinton and of the defendant himself informed the public that the ground in question was not a natural oyster-bed, and the people of that town and the public acquiesced in the decision of the committee by leaving the defendant in the undisturbed possession of the lot until this proceeding was commenced.

The committee finds that the people of Clinton had been accustomed every year to resort to the ground in question while it was a natural oyster-bed, and before it was designated to the defendant, to gather native oysters ; but the knowledge of the persons who went there at that time can hardly be imputed to the state· or the public at large, who have the beneficial interest in the land.

But the defendant claims that if the designation was originally void by reason of the lot being a natural oyster-bed, it has been legalized by the following statute enacted in 1877 :—" All designations of places for planting or cultivating oysters, within the navigable waters of any town, which have been heretofore made by authority of such town, through its selectmen or oyster-ground committee, are hereby validated and confirmed." Session Laws of 1877, ch. 94, sec. 2. This claim cannot be sustained. The oyster-ground committee had no jurisdiction over the lot in question. The pretended designation of it by them was a nugatory and void act, not performed " by authority of the town," as the town could not authorize it, and so it is not within the language of the healing act. Besides, it is clear that it was not within its intent. The rational construction of the act is that it was designed to cure mere irregularities in the action of the committee, or the omission by the persons to whom lots had been designated of the steps required to be taken by them to make the designation effectual. The legislature has jealously guarded the interest of the public in the natural oyster-beds of the state against appropriation

by individuals.   It is not to be presumed that it has reversed this policy in behalf of persons who are attempting to monopolize their use under a pretense of title.

The defendant also claims that the statute under which this proceeding is brought is in violation of the constitution because it does not provide for a trial by jury.   By it the petition is to be brought to the Superior Court as a court of equity, either by the town or a party aggrieved.   The facts are to be determined by a committee to be appointed by the court and reported to the court, which, if the allegations of the petition are found to be true, may administer specific relief by causing the stakes unlawfully set up to be removed.

We fail to see that the constitutional provision referred to is violated by this statute.   The defendant by collusion or mistake has procured the form of a designation to himself of natural oyster ground.   The pretended designation is void, and the title of the public to the ground is not affected by it, but it, and the stakes set up by the defendant as evidence of it, constitute a cloud upon the title to the ground and tend to deter the public from the enjoyment of it.

It would seem that, independently of the statute, the case would be a proper one for equitable interference, and that the state might upon general principles maintain a petition for the removal of the cloud thus cast upon its title by the cancellation of the designation and the destruction of the evidence of it.

The defendant claims that the provision in the statute that the petition may be brought in the name of the town or person aggrieved, and that the hearing shall be had before a committee, makes the proceeding one before a statutory tribunal instead of one before a court of equity.

This claim is answered by the statute, which expressly confers upon the Superior Court as a court of equity jurisdiction of the proceeding.   Although the state is not a nominal plaintiff, it is a party in interest represented by the town

or person who brings the suit by its authority and to enforce its rights.

The provision that the court should appoint a committee to hear the case was doubtless made in view of the peculiar nature of the question involved. The legislature has required the court to do what in other equity suits it has left to its discretion. No reason appears to question its power to make the enactment.

The Superior Court is advised to render judgment for the plaintiff.

In this opinion PARK, C. J., and PARDEE and LOOMIS, Js., concurred.

CARPENTER, J., dissenting. I cannot concur in the result to which the court has come.

There are cases in which persons may acquire prescriptive rights and even titles by adverse possession against the public. In *Tracy* v. *The Norwich & Worcester Railroad Co.*, 39 Conn., 382, SEYMOUR, J., speaking for this court, says:— " It is settled law in Connecticut that the title to an island, emerging as this did, in navigable waters, vests in the state, and is also settled law that a grant from the state may be presumed in favor of long continued exclusion and adverse possession." In *Town of Derby* v. *Alling*, 40 Conn., 410, this court, through the same learned judge, he then being Chief Justice, says:—" There is no statute of limitations which as such is applicable to the case. The public could not be technically disseized, but public as well as private rights may be lost by unreasonable delay in asserting them."

As I view this case it is not true that the state is the party beneficially interested. The title to the land covered by the sea is in the state, but it is a mere naked title. The state as such has never put it to any use. It builds no wharves or other structures, makes no use of it for purposes of navigation, and has never engaged in cultivating oysters. Within the last fifty years it has been discovered that Long Island Sound is a field in which a large and important in-

dustry may be developed; and it has been the policy of the state to foster it, not by engaging directly in the business, but by allotting the ground in suitable lots to individuals, thereby encouraging and stimulating private enterprises, by which means a business of immense proportions has been built up. This has not been done merely by giving a license, which may be revoked at pleasure, but each proprietor over the area allotted to him has absolute dominion, as much so for all practical purposes as a proprietor in fee of the upland. That must be so, for in no other way could there be such an exclusive right as the statute calls for. And there must be permanency in the interest granted, otherwise the business would be too uncertain and hazardous. I cannot believe that the state intended that the grantee should take anything less than a fee so long as he, his descendants or assigns, should continue to cultivate oysters. To that extent, for the time being at least, the state parted with all its interest. I think this will not be disputed as to any ground not a natural oyster or clam-bed.

But in this case it is found that the ground allotted to the defendant was a natural oyster-bed; and the statute expressly prohibits the designation of such grounds; and therefore it is claimed that the designation is void. Even if this is so, it does not follow that the designation for all purposes is wholly inoperative. It gave to him a *primâ facie* title, which must be regarded as good until determined by a judicial decree to be void. And after such a judgment it still would remain true that until then he had a colorable title and occupied under a claim of right. Now the exception in the statute was not for the benefit of the state at large, but for the benefit of the people who had been accustomed or desired to take natural oysters.

Neither is this suit prosecuted in behalf of the state. The action is special, under a special statute authorizing it in the name of the town and in behalf of the local public. The state needed no enabling act to vindicate its rights. It was competent to sue, and had its agents under existing

laws. It had no occasion to bring a suit in the name of the town.

Nor do I believe that the state of its own motion originated the act under which this suit was brought. We can hardly close our eyes to the fact that this act was passed, as such acts usually are, at the instigation of parties specially interested. While the suit relates to a public matter in this, that a portion of the public is interested in its object, yet it is in law, in name, and in reality, a suit between private parties. If therefore the subject matter had been upland of which any one had been disseized, the statute of limitations would have applied. But it is oyster ground. Nevertheless it is property; it is owned, bought, sold, and taxed. It is permanent and fixed, and therefore in the nature of real estate ; and the laws governing real estate are to a great extent applicable to it.

In this case it is true that the plaintiff was not strictly disseized ; yet it, and those it represents, were deprived of a right which they previously had, under a claim of title, accompanied with exclusive possession, for twenty-two years before this suit was brought. The case seems to me to be directly within the principle recognized as " well-settled law" in *Tracy* v. *The Norwich & Worcester Railroad Co.* and *Town of Derby* v. *Alling, supra.*

I cannot recognize as wise or just a decision which de prives the defendant of his property under such circum stances.