SAMUEL GOLDMAN *v.* RALPH QUADRATO

SUPERIOR COURT     NEW HAVEN COUNTY     FILE No. 20171
AT WATERBURY

Memorandum filed May 25, 1954.

*Richard M. Feingold,* of Hartford, for the plaintiff.

*George J. Crocicchia,* of Waterbury, for the defendant.

PHILLIPS, J. The present case involves the ownership of a strip of land, roughly triangular in shape, on the southerly side of Meriden Road, Waterbury, described in paragraph 10 of the defendant's counterclaim. The disputed strip is 3.91 feet on Meriden Road, runs southerly to a depth of a little over 110 feet, and its southerly boundary is 1.40 feet. It is concededly included in lot 3 of the "Hamilton Park Addition" the record title to which lot is in the plaintiff. The defendant owns the adjacent lot to the west, lot 2, on which his house is located. He claims the strip above referred to by adverse possession.

The complaint as amended asks damages for trespass and an injunction ordering defendant to remove a wire fence and concrete footing supporting it, and to desist from using a portion of a concrete stair and platform, adjoining the street, which are on the disputed strip. The counterclaim as amended asks damages for injury to the defendant's fence, wall and land occasioned by the removal of lateral support therefrom by the plaintiff in excavating for a building, an injunction requiring him to take certain steps to provide such lateral support, and a judgment determining the ownership of the disputed strip and quieting the title thereto.

In 1923 the city of Waterbury constructed a sidewalk along the southerly side of Meriden Road and, as a necessary part of the project, built a retaining wall along the northerly line of the defendant's land, lot 2. To provide a means of access to his house, the city built a concrete platform and a step, and a retaining wall to protect them, this wall running from the sidewalk southerly approximately six feet. This

retaining wall and a part of the step and platform were on lot 3, then owned by the city. In 1924 the defendant, believing the construction by the city was all on his land, built a wall, which was a continuation of the six-foot retaining wall, extending to the southeasterly corner of his land. In the middle of this wall he erected a fence. The wall built by the defendant and the six-foot retaining wall built by the city constitute the easterly portion of the disputed strip. During and since 1924 to the date of the writ, the defendant has exercised various acts of ownership over the entire strip, including the walls, the land, the step and the platform.

To be adverse, so as to vest title after the lapse of the statutory period, possession must be hostile and under claim of right, actual, open and notorious, exclusive, continuous and uninterrupted. See 2 C.J.S. 520. To put it another way: "[T]he essential elements of an adverse possession sufficient to create a title to the land in the adverse possessor are that the owner shall be ousted of possession and kept out uninterruptedly for a period of fifteen years, by an open, visible, and exclusive possession by the adverse possessor, without the license or consent of the owner." *Stevens* v. *Smoker,* 84 Conn. 569, 574. I find that all the elements of adverse possession existed under the facts in the present case. Whether possession is adverse in character is a question of fact. *Padula* v. *Padula,* 138 Conn. 102, 110.

Though the defendant occupied the disputed strip and exercised unequivocal acts of ownership over it, in the mistaken belief that he had record title to it, his possession was none the less adverse. *Ahern* v. *Travelers Ins. Co.,* 108 Conn. 1, 5; *Searles* v. *DeLadson,* 81 Conn. 133. These acts showed the possession to have been actual, visible and notorious, exclusive, continuous and hostile in the legal sense, and would

give the defendant title by adverse possession unless the contention of the plaintiff, now to be discussed, prevails.

The plaintiff at the trial and in argument did not question that the elements of adverse possession had been established, but rested his case upon the contention that adverse possession cannot run against the city, which owned the land which includes the strip for most of the period in question. The city of Waterbury acquired lot 3 by foreclosure of a tax lien in 1923, and held it until 1947, when it sold the lot to the plaintiff's predecessor in title.

It is true that property dedicated or devoted to a public use cannot be acquired by prescription or adverse possession as against the state. *Clinton* v. *Bacon*, 56 Conn. 508, 517. But there is a pronounced conflict of authority as to whether, in the absence of a statute expressly governing the matter, title by adverse possession may be acquired to property held by a municipal corporation for a public use. See cases cited in 2 C.J.S. 528.

The rule is clear, however, where the property is held by the municipality for other than a public use. *Robinson* v. *Lemp*, 29 Idaho 661; 10 McQuillin, Municipal Corporations (3d Ed.) § 28.55. Title by adverse possession may be acquired to property of a municipal corporation which is not in a public street and is not otherwise reserved, dedicated, or held for any public use or purpose, but is the private property of the municipality and subject to alienation by it. *Reichert* v. *San Diego*, 109 Cal. App. 548; *New Orleans* v. *Salmen Brick & Lumber Co.*, 135 La. 828; *Matter of City of New York*, 217 N.Y. 1; *New York* v. *New York Central R. Co.*, 198 App. Div. (N.Y.) 517; *Brown* v. *Fisher*, 193 S.W. 357 (Tex. Civ. App.); *Laredo* v. *DeMoreno*, 183 S.W. 827 (Tex. Civ. App.); see 2 C.J.S. 532. This principle is determinative of

the present case. The city acquired the land by fore-closure, it was not held for any public use, and it was finally alienated by it.

Furthermore, by its long continued neglect to assert any rights in the strip and by the circumstances surrounding the building of the six-foot retaining wall, platform and step, an abandonment of the strip by the city may be inferred. *Derby* v. *Alling,* 40 Conn. 410, 436.

I, therefore, hold that title to the strip of land in question is in the defendant. It follows that the plaintiff's claim of trespass cannot be sustained.

It is further found that the excavation made by the plaintiff for his building, coming as it did after previous excavations by his predecessors in title, removed the lateral support for the defendant's land and was the proximate cause of the collapse of the wall and fence and the cave-in on the rear of the defendant's land. The fence, wall and coping are old. The court has viewed the premises. The damages on the counterclaim are assessed at $200.

As a result of the removal of the lateral support, it is found that a further caving in of the defendant's land is probable, with damage to an extent which cannot be estimated at the present time. An injunction should issue requiring the plaintiff to provide suitable lateral support to the defendant's land.

Judgment may enter for the defendant on the complaint.

On the counterclaim, judgment may enter for the defendant for $200 damages, and quieting and settling the title to the strip of land described in paragraph 10 thereof in the defendant; judgment may further enter for a mandatory injunction requiring the plaintiff, within four months from the date of

judgment, to provide lateral support to the defendant's land along its easterly line as herein established by extending the westerly wall of the plaintiff's building from its present southerly terminal as far southerly as the excavation extends in line with the wall, and to fill in the space between said westerly wall and extension thereof and the easterly line of the defendant's land as established herein, to the approximate height of the earth along said easterly line of the defendant's land, and to protect the defendant's land and structures while the work is in progress, all to be done in accordance with sound building and engineering practice.