CLIFFORD H. STREET ET ALS. *vs.* CLARA E. LEETE.

Third Judicial District, Bridgeport, October Term, 1906.
BALDWIN, HAMERSLEY, HALL, PRENTICE and THAYER, Js.

In 1880 a tract of several acres owned by one Parker, on the east shore of New Haven harbor, was surveyed, laid out into streets and numbered building lots, and a map thereof filed in the town clerk's office. One of the streets shown on the map was designated Parker Place, and ran from the east boundary of the tract in a westerly direction intersecting at right angles an existing highway known as Townsend Avenue. No question arose as to the dedication of Parker Place up to this point, and the only issue in the case was whether it extended still further west, across Townsend Avenue and over a strip of land about 40 feet wide, to the harbor, as contended by the plaintiffs, or stopped at Townsend Avenue, as claimed by the defendant. This 40-foot strip ran along the shore for the entire width of the tract, about 800 feet, and was divided upon the map into the same number of parts or lots as those shown on the east side of Townsend Avenue, the lines of division being mere prolongations to the water of the lines of the

Street *v.* Leete.

east lots.  As each of these last-named lots was sold, its corresponding portion of the 40-foot strip accompanied it, reference being made in the conveyance to the map on file in the town clerk's office.  In bounding two of these 40-foot strip portions, which lay on either side of the land in question, the *locus in quo* was referred to in the deeds as "Parker Place continued."  The map also stated that there were forty-two lots for sale, besides the mansion house and its three acres, with 800 feet of frontage on the water.  The plaintiffs had purchased their lots from time to time, and since 1886 the *locus* had been in constant use by them and the public in going to and from the beach with teams and on foot, until 1906, when Parker made a conveyance of it to the defendant, who began to build upon it.  It also appeared that Parker had declared in the presence of some of the plaintiffs that the *locus* could not be sold as it had been dedicated to the public.  *Held :—*

1. That upon these facts the trial court was fully justified in its conclusion that Parker Place, including the *locus*, had been dedicated by Parker to the use of the public as a highway and had been accepted as such by them.

2. That if the defendant was entitled to any notice of the dedication, the recorded map and deeds were sufficient.

Prima facie the proprietors adjoining a highway own the fee to the middle of the street.

Argued October 24th—decided December 18th, 1906.

SUIT to permanently restrain the defendant from building upon land alleged to have become a highway by dedication, and from otherwise obstructing public travel thereon, brought to and tried by the Court of Common Pleas in New Haven County, *Bennett, J.;* facts found and judgment rendered for the plaintiffs, and appeal by the defendant.  *No error.*

*William B. Stoddard* and *Robert H. Gould,* for the appellant (defendant).

*E. P. Arvine* and *Edward H. Rogers,* for the appellees (plaintiffs).

HALL, J.  All but three of the plaintiffs are owners of building lots which are parts of a tract of land near the shore at Morris Cove, New Haven, called the "Parker

Property" and shown by the accompanying map. Three of them, though not owning any of the lots indicated upon said map, own lots at Morris Cove in the vicinity of the tract in controversy.

The plaintiffs ask that the defendant be restrained from

MAP
of the
"PARKER PROPERTY"
Morris Cove, South Haven,

erecting a building, or placing any obstructions, upon a portion of said tract about forty feet square, lying upon the shore west of Townsend Avenue and directly opposite that part of said tract marked "Parker Place" on said map, alleging that Parker Place is a public highway and

that the small tract in question is a continuation and part of Parker Place. The defendant denies that the tract in question is a highway, and claims that she is the owner of it, having acquired an unincumbered title thereto by deed on the 30th of April, 1906.

The following facts found by the trial court are pertinent to the respective claims of the parties : Prior to 1882 James and Cornelia Parker, who were then the owners of a tract of land at Morris Cove contiguous to New Haven harbor, caused a survey and map of it, represented by the accompanying sketch, to be made and filed in the office of the town clerk of New Haven. In March, 1882, said Parkers conveyed to one of the plaintiffs, who with others of the plaintiffs still own the same, the lot number 6 with the small tract on the shore west of Townsend Avenue and directly opposite number 6, and also lots numbers 14 and 15; and in the same month conveyed to one Woodward lot number 21, now owned by one of the plaintiffs; said last-named three lots being described in the deeds as bounded "southerly by 'Parker Place.'" On different dates from March 23d, 1882, to June 30th, 1886, said Parkers sold to different persons the remaining lots numbered from 1 to 9, and also the lots numbered 11, 12, and 13, in each instance conveying with the lot sold the small tract on the shore west of Townsend Avenue and opposite the lot so sold. On June 30th, 1886, James Parker, then the sole owner of said land, conveyed lot number 10, now owned by one of the plaintiffs, to one Stevens, describing it in the deed as bounded "south by Parker Place," and included in the same deed the small tract west of Townsend Avenue on the shore and directly opposite lot number 10, describing it as bounded "south by land of grantor [the said Parker Place continued]"; and also on the same day conveyed to one Beecher the large unnumbered three-acre tract near the center of the map, including lots numbered from 22 to 25 inclusive, described in the deed as containing the residence and out buildings of the late Charles M. Parker, and bounded northerly by Parker Place.

In the same conveyance to Beecher was included the strip of land lying west of Townsend Avenue on the shore, 240 feet in length and directly opposite the said central tract, which in said deed was bounded on the north "by land of said grantor [the said Parker Place continued]." On June 30th, 1886, and after he had made the conveyances above described, said Parker conveyed to Joseph B. Morse lots numbered 16 to 20 inclusive, bounding them southerly on "Parker Place," and lots numbered 26 to 42 inclusive, and also "Madison Place" and the small tract on the shore west of Townsend Avenue and opposite "Madison Place." This deed also contained the following language : "The said map on file is referred to for a more particular description of the premises hereby conveyed : meaning hereby to convey to said grantee all my remaining interest in the land described on said map on file." In all the deeds of the numbered lots of said map the numbers of the lots sold are given, and they are stated to be known and described as lots of such numbers upon the said map of the "Parker Property" on file.

Except as may be indicted by the deeds above described, the Parkers made no attempt to convey to any person Parker Place, or the land in question on the shore opposite Parker Place and west of Townsend Avenue, until April 30th, 1906, when James Parker executed a quit-claim deed to said Joseph B. Morse of the shore tract in question, describing it as bounded east by Townsend Avenue forty feet, southerly by land of said Beecher, westerly by the harbor, and northerly by land of said Clifford H. Street, and as "being a part of the land intended to be conveyed to said releasee by deed dated June 30, 1886." Afterward, on the same day, Morse conveyed the same tract to the defendant, giving the same boundaries, with the addition that the northerly and southerly boundaries were respectively continuations of the northerly and southerly boundaries of "Parker Place."

As the lots indicated upon the map have been sold, cottages have been built upon them, and that part of Parker

Place lying east of Townsend Avenue has since 1886 been worked and used by the plaintiffs and the public as a highway.

There has for many years been a fence on the south side of the tract claimed by the defendant, but none upon the north. It has been open upon the east and west until four years ago, when the plaintiff Street built a bulkhead with steps over it upon the west side, to prevent the sea from washing away the land and undermining the walls in front of the lots north and south of it. It has been used by the public in going to and from the beach with teams, as a landing and embarking place for small boats, and since 1886 has been in constant use by the plaintiffs and the public as a way of access on foot to the beach and the sea. There has been no marked road over it, and its surface has been similar in appearance to that of shore land adjoining it upon the north and south. The said Parkers have declared in the presence of certain of the plaintiffs that it could not be sold as they had dedicated it to the public.

The defendant had no actual knowledge that it was claimed that the tract in question was a public highway. She purchased in good faith, for a valuable consideration, and with the intention of erecting a summer cottage upon it.

Upon these facts the trial court found that the land designated upon the map as "Parker Place," including the tract west of Townsend Avenue, claimed by the defendant, was dedicated by the Parkers to the use of the public as a highway, and has been accepted as such by the public.

This conclusion is fully sustained by the facts found. It is supported not only by the legitimate evidence of the declarations of the Parkers, who originally laid out this property in lots and streets as it appears upon the map and under whom both plaintiffs and defendant claim title (*Pierce* v. *Roberts*, 57 Conn. 31, 17 Atl. 275 ; *Grogan* v. *Hayward*, 4 Fed. Rep. 161), and the evidence of the use which the public has made of this land for more than

fifteen years, as above set forth, but by the lines and statements of the map and the language of several of the deeds which have been described.

The map indicates upon its face that the tract in question was intended to be a continuation, west of Townsend Avenue, of "Parker Place," which was unquestionably dedicated as a highway. *Derby* v. *Alling*, 40 Conn. 410. It indicates this, because, upon looking at everything upon this map of property offered for sale, it appears that the designated tracts west of Townsend Avenue were not offered for sale as separate lots, but that they were intended to represent parts or continuations of those tracts east of Townsend Avenue opposite to them and having corresponding side lines; and that all the small tracts west of Townsend Avenue opposite numbered lots, as well as the narrow strip opposite the three-acre central tract, were intended to be sold, as they in fact were, in connection with the numbered lots and the central tract east of Townsend Avenue.

The fact that the side lines of the lots adjoining the east side of Townsend Avenue are all extended to the shore; that it is stated upon the map that the property represented and offered for sale embraces the three acre-tract and forty-two lots, and the numbers from 1 to 42 all appear upon the lots east of Townsend Avenue and none upon the small tracts west of it; that if the small tracts are counted as separate lots there would be fifty-eight instead of forty-two lots; that only by regarding the tracts west of Townsend Avenue as parts of those east of it, could there be the 800 feet of water frontage, which the map states the property to be sold will have; and that the tracts west of Townsend Avenue appear to be very small for building purposes,—all tend to show such intention.

Even stronger evidence of the intention to dedicate the tract in question to the use of the public is found in the language of the deeds to Stevens and to Beecher of June 30th, 1886, in each of which the grantor Parker very clearly says that it is a continuation of "Parker Place."

It is true he also says he is the owner of it. He, perhaps, supposed that he owned the fee subject to the public easement. In his deed to Morse, executed the same day, he claimed to be the owner of Madison Place, which upon the map is clearly shown to have been intended as a highway.

The first deed to Morse does not even purport to convey the tract in question. The words in that deed, " meaning hereby to convey to said grantee all my remaining interest in the land described in the map on file," indicate that the grantor believed that the tracts particularly described in the deed embraced all the land owned by him described upon the map. The deed, with the map made a part of it, contains no description of the tract in question as a part of the land conveyed by it.

The deeds of April 30th, 1906, from Parker to Morse and from Morse to the defendant, could at the most have conveyed but the fee to the tract in question subject to the public easement. But even that is prima facie in the plaintiff Street and in Beecher, who own the adjoining land on each side. *Peck* v. *Smith*, 1 Conn. 103.

If the defendant was entitled to any notice that the tract in question had been dedicated to the public use, the recorded map and deeds were sufficient notice.

Those of the plaintiffs who own land abutting on " Parker Place " or " Townsend Avenue " have sufficient interest to maintain this action. *Wheeler* v. *Bedford*, 54 Conn. 244, 248, 7 Atl. 22. If others who are joined with them have not such interest, the judgment is not thereby invalidated or rendered erroneous. General Statutes, § 622.

There is no error.

In this opinion the other judges concurred.